[Cite as *State v. Beamer*, 2012-Ohio-2222.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | |
| DEBBIE BEAMER | : | Case No. 11CA14 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Municipal Court,
                                  Case No. 11CRB253


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 May 16, 2012


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CHRISTIE M. L. NELSON                     JEFFREY G. KELLOGG
760 Chestnut Street                       239 North Fourth Street
Coshocton, OH  43812                      Coshocton, OH  43812

*Farmer, J.*

{¶1}   On May 29, 2011, Coshocton County Sheriff's Deputy Jonathan Spohn and EMS personnel were dispatched to investigate an unresponsive female in a motor vehicle on a very hot day.  The female was appellant, Debbie Beamer.  After being aroused, appellant refused treatment and became belligerent with Deputy Spohn and the EMS personnel.  As a result, appellant was charged with aggravated disorderly conduct in violation of R.C. 2917.11.

{¶2}   A bench trial commenced on July 20, 2011.  By judgment entry filed August 10, 2011, the trial court found appellant guilty and ordered her to pay a fine and court costs.

{¶3}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶4}   "THE TRIAL COURT ERRED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION."

I

{¶5}   Appellant claims the trial court erred in finding her guilty of disorderly conduct as there was insufficient evidence to support the conviction.  We disagree.

{¶6}   On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State v. Jenks* (1991), 61 Ohio St.3d 259.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307.

{¶7} Appellant was convicted of disorderly conduct in violation of R.C. 2917.11(A)(2) which states the following:

{¶8} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

{¶9} "(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person."

{¶10} Appellant argues none of her words were of such a level as to establish any of the elements of R.C. 2917.11(A)(2). Appellant also argues her words were not sufficient to offend law enforcement officers or medical personnel and did not constitute a breach of the peace.

{¶11} "Punishment for disorderly conduct based on spoken words is prohibited unless those words amount to 'fighting words.' See *State v. Hoffman* (1979), 57 Ohio St.2d 129, 133, 387 N.E.2d 239; *State v. Wood* (1996), 112 Ohio App.3d 621, 627, 679 N.E.2d 735. 'Fighting words' are those words that are likely by their very utterance to inflict injury or to incite an immediate breach of the peace. *State v. Thompson,* 95 Ohio St.3d 264, 265, 767 N.E.2d 251, 2002-Ohio-2124, citing *Chaplinsky v. New Hampshire* (1942) 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031. In determining whether language rises to the level of 'fighting words,' courts look at the circumstances surrounding the words. *Hamilton v. Johnson* (Dec. 3, 1999), Butler App. No. CA99-02-

025, 1999 WL 1087024, *4, citing *State v. Presley* (1992), 81 Ohio App.3d 721, 724, 612 N.E.2d 353.

{¶12} "This court has stated that 'profane words specifically and intentionally directed to a * * * [police] officer usually constitute fighting words, while an inappropriate and vulgar commentary about the situation, without more, is not punishable.' *Johnson* at *4, citing *Wood* at 627-629, 679 N.E.2d 735. Words directed to a police officer that courts have found to be 'fighting words' include, 'What are you going to do, asshole, pig? You going to arrest me?' *State v. Dickey* (1991), 75 Ohio App.3d 628, 630, 600 N.E.2d 365; 'I hate all of you fucking prick-ass cops * * * get out of my way you fucking prick-ass cops,' *Cincinnati v. Karlan* (1974), 39 Ohio St.2d 107, 314 N.E.2d 162, paragraph three of the syllabus; and 'You're a fucking jackass[.]' *Johnson* at *4. Words directed to a police officer that, while vulgar, courts have not found to be 'fighting words' include, 'stay away from the fucking door, get the fuck out of here,' *Kent v. Kelley* (1975), 44 Ohio St.2d 43, 43, 337 N.E.2d 788; 'the police are worthless, this is f[ucking] bullshit,' *Toledo v. Grince* (1989), 48 Ohio App.3d 126, 127, 548 N.E.2d 999; and 'go ahead, tow the motherfucker[.]' *State v. Lamm* (1992), 80 Ohio App.3d 510, 514, 609 N.E.2d 1286." *Middletown v. Carpenter,* Butler App. No. CA2006-01-004, 2006-Ohio-3625, ¶14-15.

{¶13} Deputy Spohn testified he responded to a call relative to an unresponsive female in the driver's seat of a vehicle in 90° heat. T. at 18-19. She had a "bag of potato chips in her lap and potato chips were running from her mouth down her shirt, all the way down." T. at 33-34. "[I]t seemed as if she had some kind of a medical condition, some diabetic or something, I'm not so sure." T. at 34. Deputy Spohn

attempted to wake her, but was unable to do so. T. at 18-19. EMS arrived and removed appellant from the vehicle to make sure she was "medically okay." T. at 20. Appellant refused to be checked out and told EMS " 'to leave her the fuck alone.' " Id. When told she had to be checked out "because of the temperature and possible medical issues," appellant told them to " '[l]eave her alone' " and was "extremely belligerent." T. at 21. Deputy Spohn testified to the following:

{¶14} "It states that when we woke [her] up and we advised her for medical attention that she checked that she had indicated that I was 'a fucker.' There was several people on the street, on the sidewalks, in the area obviously due to the fact that we were there, the squad was there. I advised her that if she didn't calm down and stop using the offensive language and be a little more quiet she would be arrested for disorderly conduct." T. at 22.

{¶15} During the incident, people were congregating and appellant's comments were loud enough to be heard. T. at 23, 32. Again, she said to Deputy Spohn " '[y]ou are a fucker' " and Deputy Spohn placed her under arrest. T. at 23.

{¶16} Deputy Spohn testified appellant's language was not only offensive to him, but to the EMS personnel and the spectators. T. at 23-24. Deputy Albert Havranek corroborated his testimony. T. at 63. Melissa Leckrone, Brian Shueler, and Todd Guthrie, EMS personnel, also testified appellant's language was angry and offensive and was loud enough to be heard by the bystanders. T. at 41-42, 50-51, 55-56. Appellant called the officers "pigs" and "squirrely ass pigs." T. at 42, 56, 60.

{¶17} Appellant testified she was not eating potato chips but chocolate frosting out of a can. T. at 66. She fell asleep and the next thing she remembers was "being

awoken with all these eyeballs staring at me." Id. Appellant explained that she does not use the "F word with the E-R. That's not a word. I said, 'F'ing idiot.' " T. at 70. She wholeheartedly denied calling Deputy Spohn an 'F'ing E-R' but "I very well might indeed quite possibly, 99.9 percent possible, that I called him an F'ing idiot. The word with the E-R, never. Wrong word." Id.

{¶18} Ohio consistently cautions that law enforcement officers must have a thicker skin than the public as a whole. However, in the facts set forth sub judice, appellant's offensive language was made to three EMS personnel and the gathering bystanders. We conclude appellant's words were offensive not only to the EMS personnel, but created an annoyance that caused a crowd to gather. We conclude there was sufficient evidence for the trial court to find appellant guilty of disorderly conduct.

{¶19} The sole assignment of error is denied.

{¶20}  The judgment of the Municipal Court of Coshocton County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Edwards, J. concur.


s/ Sheila G. Farmer_____


s/ W. Scott Gwin_____


s/ Julie A. Edwards_____

JUDGES



SGF/sg 427

[Cite as *State v. Beamer*, 2012-Ohio-2222.]

IN THE COURT OF APPEALS FOR COSHOCTON COUNTY, OHIO

FIFTH APPELLATE DISTRICT


STATE OF OHIO      :
           :
 Plaintiff-Appellee    :
           :
-vs-         :    JUDGMENT ENTRY
           :
DEBBIE BEAMER     :
           :
 Defendant-Appellant   :    CASE NO. 11CA14


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Coshocton County, Ohio is affirmed. Costs to appellant.



         s/ Sheila G. Farmer_____


         s/ W. Scott Gwin _____


         s/ Julie A. Edwards_____

           JUDGES